# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 25, 2019      Decided March 10, 2020

No. 18-7162

MICHAEL MOLOCK, ET AL.,
APPELLEES

v.

WHOLE FOODS MARKET GROUP, INC.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02483)

———

*Gregory J. Casas* argued the cause and filed the briefs for appellant.

*Steven P. Lehotsky*, *Nicole A. Saharsky*, and *Andrew J. Pincus* were on the brief for *amici curiae* the Chamber of Commerce of the United States of America, et al. in support of appellant.

*Richard A. Samp* was on the brief for *amicus curiae* Washington Legal Foundation in support of appellant.

*Scott L. Nelson* and *Allison M. Zieve* were on the brief for *amicus curiae* Public Citizen, Inc. in support of plaintiffs-

appellees and affirmance.

*Matthew W.H. Wessler* argued the cause for appellees. With him on the briefs were *Jonathan E. Taylor* and *Salvatore J. Zambri*.

Before: TATEL and GARLAND, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Dissenting opinion filed by *Senior Circuit Judge* SILBERMAN.

TATEL, *Circuit Judge*: In this not yet certified class action, the defendant moved to dismiss all nonresident putative class members for lack of personal jurisdiction. The district court denied the motion on the merits. We affirm, but on alternative grounds. Absent class certification, putative class members are not parties before a court, rendering the defendant's motion premature.

## I.

Whole Foods, a Delaware corporation headquartered in Texas, allegedly manipulated its incentive-based bonus program, resulting in employees losing wages otherwise owed to them. Current and former Whole Foods employees (the Employees) initiated this diversity action in the District Court for the District of Columbia to recover the purportedly lost wages. The Employees brought various state law claims and sought to represent a putative class of "past and present employees of Whole Foods." Second Am. Class Action Compl. 25.

Whole Foods moved to dismiss on several grounds, only one of which is relevant here: it argued that the district court lacked personal jurisdiction to entertain the claims of the nonresident putative class members. The district court denied the motion and certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Whole Foods then filed a petition for leave to appeal, which this court granted.

We review the district court's denial of Whole Foods' motion to dismiss de novo. *See Liff v. Office of Inspector General for U.S. Department of Labor*, 881 F.3d 912, 918 (D.C. Cir. 2018) ("We review *de novo* the District Court's legal conclusions denying a motion to dismiss.").

## II.

Here and in the district court, the parties debate an issue left unresolved by the Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). There, a group of six hundred plaintiffs brought a mass tort action in California state court against the pharmaceutical firm Bristol-Myers Squibb. *Id*. at 1778. All plaintiffs asserted California state law claims, but only eighty-six were California residents; the rest resided elsewhere. *Id*. The firm moved to quash service of summons on the nonresidents' claims, arguing that the California court lacked specific jurisdiction to hear those claims. *Id*. The Supreme Court agreed, explaining that "[i]n order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum," meaning "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. at 1780 (internal citations, alterations, emphasis, and quotation marks omitted). Applying that

standard, the Court found that the nonresidents' claims lacked an "adequate link" with California to justify the exercise of specific jurisdiction. *Id*. at 1781.

Significantly for our purpose, the Court carefully limited its holding: "since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1783–84 (citing *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987)). Justice Sotomayor, dissenting, further explained that "the Court today does not confront whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Bristol-Myers*, 137 S. Ct. at 1789 n.4 (Sotomayor, J., dissenting). These are the issues the parties address in their briefs.

Whole Foods argues that because the district court is sitting in diversity, its personal jurisdiction is conterminous with that of a District of Columbia court. *See Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) ("In a diversity case, the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia court."). So, Whole Foods contends, the district court should have dismissed the nonresident putative class members because a District of Columbia court would lack both general and specific personal jurisdiction over their claims. It would lack general jurisdiction because Whole Foods, a Delaware corporation headquartered in Texas, is not "at home" in the District of Columbia. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011). And it would lack specific jurisdiction because the claims of the nonresident putative class members do not "arise out of or relate to" Whole

Foods' contacts with the District, *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotation marks and alterations omitted); rather, they stem from Whole Foods' conduct at out-of-District stores.

The Employees take a different view. Acknowledging that a federal court sitting in diversity typically exercises personal jurisdiction conterminously with that of the state in which it sits, they argue that class actions present an exception to this general rule. According to them, Federal Rule of Civil Procedure 23 permits a federal court sitting in diversity to exercise personal jurisdiction over unnamed, nonresident class members' claims, even if a state court could not.

In the alternative, the Employees argue that the district court should have denied Whole Foods' motion to dismiss, not on the merits, but on the ground that it was premature because prior to class certification putative class members are not parties to the action. On this point, we agree. *See United States v. Lawson*, 410 F.3d 735, 740 n.4 (D.C. Cir. 2005) ("[W]e may affirm on grounds other than those presented and relied on below."); *United States v. Garrett*, 720 F.2d 705, 710 (D.C. Cir. 1983) ("It is well settled that in reviewing the decision of a lower court, that decision must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason." (internal quotation marks and alterations omitted)).

In *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), the Supreme Court explained that "[i]n general, a party to litigation is one by or against whom a lawsuit is brought or one who becomes a party by intervention, substitution, or third-party practice." *Id.* at 313 (internal quotation marks, citations, and alterations omitted). "[T]he label 'party,'" the Court observed in *Devlin v. Scardelletti*, 536 U.S. 1 (2002), "does not indicate an absolute characteristic, but rather a conclusion about the applicability of

various procedural rules that may differ based on context." *Id*. at 10.

For example, in *certified* class actions, "[n]onnamed class members . . . may be parties for some purposes and not for others." *Id*. at 9–10. In *Devlin*, the Court held that unnamed class members are "considered . . . 'part[ies]' for the purposes of appealing the approval of [a] settlement." *Id*. at 7. Unnamed class members are also parties for purposes of claim preclusion: "a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). But unnamed class members are treated as nonparties for other purposes, including jurisdictional ones. In diversity suits, for example, unnamed class members are nonparties for the complete diversity requirement of 28 U.S.C. § 1332. *See Devlin*, 536 U.S. at 10 ("The rule that nonnamed class members cannot defeat complete diversity is . . . justified by the goals of class action litigation."). Lower courts also generally agree that unnamed class members are not parties for purposes of consenting to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). *See Koby v. ARS National Services, Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017) (collecting cases).

By contrast, putative class members—at issue in this case—are *always* treated as nonparties. The Supreme Court made this clear in *Smith*. There, a federal district court enjoined a state court from hearing a class certification motion because the federal court "had earlier denied a motion to certify a class in a related case, brought by a different plaintiff against the same defendant alleging similar claims." *Smith*, 564 U.S. at 302. The injunction was proper, the district court reasoned, because Smith—the party seeking class certification in state court—was an unnamed member of the putative federal class action and thus barred by claim preclusion from seeking class

certification in the similar state action. *Id*. at 313. The Supreme Court disagreed, holding that "the mere proposal of a class . . . could not bind persons who were not parties." *Id.* at 318. "[N]o one," the Court declared, "'advance[s] the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation *before the class is certified*.'" *Id*. at 313 (quoting *Devlin*, 536 U.S. at 16 n.1 (Scalia, J., dissenting)). The Court held that, absent class certification, Smith was not a party to the federal action and so could not be bound by the federal district court's decision. *Id*. at 314–15; *see also Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("A plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.").

Whole Foods argues that in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court held that putative class members are parties (at least) for the purpose of tolling statutes of limitations. *Id*. at 551. In *Smith*, however, the Court expressly repudiated this interpretation of *American Pipe* and its progeny, explaining that those decisions were "grounded in policies of judicial administration" and "demonstrate only that a person not a party to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding." 564 U.S. at 313 n.10. Even for the purpose of tolling limitations periods, then, putative class members are not parties.

Putative class members become parties to an action—and thus subject to dismissal—only after class certification. *See In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1245 (11th Cir. 2006) ("The granting of class certification under Rule 23 authorizes a district court to exercise personal jurisdiction over unnamed class members who otherwise might be immune to the court's power."). It is class certification that

brings unnamed class members into the action and triggers due process limitations on a court's exercise of personal jurisdiction over their claims. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001) ("[A] class action, when filed, includes only the claims of the named plaintiff or plaintiffs. The claims of unnamed class members are added to the action later, when the action is certified as a class under Rule 23."). Any decision purporting to dismiss putative class members before that point would be purely advisory. *Cf. Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[Courts'] judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (internal quotation marks omitted)).

To be clear, this rule is not peculiar to class actions; rather, it is merely a specific application of the more general principle that personal jurisdiction entails a court's "power over the parties before it." *Lightfoot v. Cendant Mortgage Corp.*, 137 S. Ct. 553, 562 (2017). Nonparties are, by definition, not "parties before [a court]." *Id.*; *see In re Checking Account Overdraft Litigation*, 780 F.3d 1031, 1037 (11th Cir. 2015) ("[T]he unnamed putative class members are not yet before the court."). Motions to dismiss nonparties for lack of personal jurisdiction are thus premature—not to mention "novel and surely erroneous." *Smith*, 564 U.S. at 313 (internal citations and quotation marks omitted).

Because the class in this case has yet to be certified, Whole Foods' motion to dismiss the putative class members is premature. Only after the putative class members are added to the action—that is, "when the action is certified as a class under Rule 23," *Gibson*, 261 F.3d at 940—should the district court entertain Whole Foods's motion to dismiss the nonnamed

class members.

Whole Foods insists that the Employees forfeited this argument by failing to raise it in the district court. True, the Employees did not argue, as they do here, that the district court should have denied Whole Foods' motion to dismiss because putative class members are nonparties; instead, they focused primarily on the scope of district court authority over nonresident class members post-certification. And it is also true that "issues and legal theories not asserted in the district court ordinarily will not be heard on appeal." *Prime Time International Co. v. Vilsack*, 599 F.3d 678, 686 (D.C. Cir. 2010) (internal quotation marks omitted).

We may, however, "consider an issue antecedent to and ultimately dispositive of the dispute before" us, even one "the parties fail to identify and brief." *U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 447 (1993) (internal quotation marks and alterations omitted). Such an exception to the forfeiture rule squarely applies here because the party status of putative class members both precedes the question of personal jurisdiction and disposes of this appeal. And the exception is particularly fitting where, as here, the issue is a "straightforward legal question," which "both parties have fully addressed." *Prime Time*, 599 F.3d at 686.

Whole Foods' remaining arguments are without merit.

First, Whole Foods asserts that even if putative class members are "nominally 'absent' before certification, their claims . . . are not." Appellant's Reply Br. 4. Accordingly, Whole Foods says, it "cannot be subject to specific jurisdiction related to the unnamed putative class members' claims, regardless of the 'party' status of absent class members." *Id*. Whole Foods provides scant support for this assertion, citing

only stray Supreme Court language to the effect that a class complaint raises the specter of "classwide liability," *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395 (1977), and requires defendants "to preserve evidence and witnesses respecting the claims of all the members of the class," *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983). These decisions stand for the unremarkable proposition that class allegations put a defendant on notice as to the scope of its potential liability and evidentiary obligations. But prior to class certification, the potential class and its potential members and their potential claims are just that: potentials. Personal jurisdiction need not be established over these hypothetical parties and claims because they are not "before [the court]." *Lightfoot*, 137 S. Ct. at 562. More to the point, *Smith* forecloses Whole Foods' argument: putative class members and their claims are joined to the action only after the class is certified. 564 U.S. at 318.

Next, Whole Foods argues that personal jurisdiction issues must be "addressed as soon as possible," even prior to class certification. Appellant's Reply Br. 19–20. But the Supreme Court has suggested just the opposite. In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court declined to address whether certain putative class members' claims "me[t] the then-current amount-in-controversy requirement . . . specified for federal-court jurisdiction based upon diversity of citizenship" because the jurisdictional defect "would not exist but for . . . class-action certification." *Id*. at 612 (internal quotation marks and alterations omitted). The Court explained that where certification issues are "logically antecedent to the existence of any Article III issues, it is appropriate to reach them"—that is, the certification issues—"first." *Id*. at 612; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 830–31 (1999) (taking a similar approach). The same logic applies here: whether the putative nonresident class members are parties to

the action is "logically antecedent" to whether the court has authority to exercise personal jurisdiction over them.

Finally, Whole Foods complains about the burdens of class discovery. But concerns about discovery costs must yield to Supreme Court precedent, which makes clear that putative class members are nonparties prior to class certification. *Smith*, 564 U.S. at 313. Moreover, "district courts have broad discretion in structuring discovery" to limit unnecessary or overly burdensome requests, including by bifurcating class and merits discovery. *Hussain v. Nicholson*, 435 F.3d 359, 363 (D.C. Cir. 2006) (internal quotation marks omitted). The dissent's concern that plaintiffs could receive extensive class discovery even if a hypothetical Supreme Court decision resolved the *Bristol-Myers* issue in defendants' favor is therefore misplaced. *See* Dissenting Op. at 7–8. We review discovery rulings for abuse of discretion, *Hussain*, 435 F.3d at 363, and a district court would necessarily abuse its discretion by permitting nationwide discovery on claims that Supreme Court precedent squarely foreclosed.

Our dissenting colleague further contends that the whole discussion of putative class members' party status is beside the point because "Whole Foods did not move to dismiss nonresident putative class members; it moved to dismiss the named plaintiffs' claim to represent those putative class members." Dissenting Op. at 6. We respectfully disagree.

Before the district court, Whole Foods asserted that the Employees alleged "no facts to support personal jurisdiction over . . . non-resident putative-class members" and called on the district court to "limit the adjudication of the remaining Plaintiffs' claims as described above." Mem. of Points and Authorities in Support of Defs.' Mot. to Dismiss Pls.' Second Am. Compl. 13. Although unconventionally framed, Whole

Foods' papers are best read as moving to dismiss the nonresident putative class members' claims for lack of personal jurisdiction, not as challenging the Employees' right to represent those claims consistent with Federal Rule of Civil Procedure 23; indeed, Whole Foods' motion to dismiss never even cites Rule 23. Such a reading is bolstered by the fact that elsewhere in its motion Whole Foods moved to dismiss "the claims of purported absent class members" on other grounds, i.e., lack of standing. Defs.' Mot. to Dismiss Pls.' Second Am. Compl. 2. But any ambiguity over Whole Foods' position before the district court is resolved by the fact that, before this court, Whole Foods expressly states that it "moved to dismiss claims asserted on behalf of nonresident putative-class members because there were no facts to support personal jurisdiction as to those nonresidents' claims." Appellant's Br. 7. Maintaining that position on appeal, Whole Foods insists that "[t]he claims of all unnamed putative class members whose claims are unrelated to Whole Foods' operations in the District of Columbia should be dismissed." Appellant's Br. 38. We take Whole Foods at its word that it sought, and continues to seek, dismissal of the nonresident putative class members' claims for lack of personal jurisdiction.

### III.

For the reasons given above, we affirm the district court's denial of Whole Foods' motion to dismiss the nonresident putative class members and remand to the district court for further proceedings consistent with this opinion.

*So ordered.*

SILBERMAN, *Senior Circuit Judge*, dissenting: The majority disposes of this appeal by concluding that Whole Foods' motion to dismiss was premature, notwithstanding the plaintiffs' repeated failure to raise the issue to the district court. I would not excuse that forfeiture. But even if we did, the majority's conclusion rests on the flawed premise that Whole Foods sought to dismiss the nonresident putative class "members" and "their claims" for lack of personal jurisdiction. Whole Foods did not actually do that. Whole Foods moved to dismiss the claims in the *named plaintiffs' complaint*, contending that *Bristol-Myers* required that those claims "should be limited to alleged injuries occurring within the District of Columbia, pursuant to Federal Rule of Civil Procedure 12(b)(2)." R. Doc. 30, at 1. That is a run-of-the-mill attack on class certification at the pleading stage, and such a motion was not premature. Because I would reach the *Bristol-Myers* question and hold that class claims unrelated to Whole Foods' contacts with the District of Columbia cannot proceed, I respectfully dissent.

**I.**

**A.**

As noted, the majority decides an issue—whether Whole Foods' motion to dismiss for lack of personal jurisdiction was premature—notwithstanding that the issue was forfeited by the plaintiffs by never raising it below. Recognizing this is a violation of our normal procedure, the majority invokes the Supreme Court's decision in *U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439 (1993). As I have written before, that opinion, justifying a federal court's discretion to reach out and decide a forfeited or waived issue, is a serious attack on fundamental notions of federal judicial restraint. *See United States v. Moore*, 110 F.3d 99, 101–02 (D.C. Cir. 1997) (Silberman, J., dissenting from the denial of rehearing en banc). After all, the very notion of deciding a case or controversy necessarily implies resolving the

contentions of the parties before the court—not gratifying the musings of judges acting like law professors or worse yet, activist policymakers. Careful observers of Supreme Court opinions will recognize *Independent Insurance Agents* as an indication that the Court, unfortunately, sees itself not as a tribunal limited to actual *cases*, but rather one that, all too often, regards its role as a body that decides legal *issues*—somewhat like the Supreme Judicial Court of Massachusetts, which is authorized to deliver advisory opinions.[1]

Since the Supreme Court did not set forth any standard that would govern this discretionary authority—it would've been analytically impossible—it is available for any federal court to exercise when it wishes a certain result. That, of course, undermines perhaps the most important governing concept of judicial decisionmaking, i.e., that the process be fair. Allowing a court to reach a ground not preserved by the parties is dreadfully unfair to the party against whom that discretion is brandished. That is why I will never rely on *Independent Insurance Agents* in any of my opinions.

**B.**

Since my colleagues rely on *Independent Insurance Agents* to reach the issue of prematurity, I feel obliged to demonstrate why, even if the issue had been properly raised, the plaintiffs' argument should be rejected. The majority opinion is based on the premise that Whole Foods' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction necessarily was aimed at dismissing the putative class "members" and "their claims" *as parties*. Op. at 2, 4, 7, 8, 10, 12. Putative class members are not

---

[1]I have often thought that the Supreme Court would have greater impact on the lower courts if its focus was on the *way* it decides cases rather than *what* it decides.

"parties" to the action for any purpose, so the reasoning goes, thus before class certification there are no parties (other than those named) for a district court to dismiss. I think the key premise is false.[2]

Whole Foods moved to dismiss the "claims" in the plaintiffs' "class action complaint," and contended that whatever claims remained "should be limited to alleged injuries occurring within the District of Columbia, pursuant to Federal Rule of Civil Procedure 12(b)(2)." R. Doc. 30, at 1. The motion did not ask for dismissal of any person, let alone the putative class members. Nor did the motion specify that the "claims" it challenged for lack of personal jurisdiction were those of the putative class members as opposed to those of the named plaintiffs.[3] Instead, on the first occasion Whole Foods had to respond to the plaintiffs' new argument—in its reply brief in this court—Whole Foods describes itself as "challeng[ing]" "class

---

[2]The majority also states that an order granting Whole Foods' motion would be "purely advisory," raising the specter of an Article III problem. Op. at 8. But that is a chimera. What is outside the power of federal courts that lack subject matter jurisdiction is adjudication *on the merits*. *In re Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). A court that dismisses claims or persons for lack of personal jurisdiction makes no assumption of that sort of law-declaring power, *see Papandreou*, 139 F.3d at 255; it does the exact opposite. The majority's citation to *Preiser v. Newkirk*, 422 U.S. 395 (1975), is appropriately halfhearted because the Court in *Preiser* was faced with a merits question. *See id.* at 400–01.

[3]The majority notes the use of *different* language in a *different* part of the motion to dismiss, and reasons that Whole Foods probably intended the same meaning in the portion at issue. Op. at 12. One might just as easily come to the opposite conclusion, and that would certainly be a fairer reading of the motion.

definitions" and "class allegations." Appellant's Reply Br. at 21.[4] And critically, Whole Foods explains in its reply brief that insofar as the motion to dismiss did target the claims of putative class members, Whole Foods sought to do so *independent of* the putative class members themselves. The putative class members' claims are nominally present in the case, Whole Foods argues, even if the class members themselves are not. Appellant's Reply Br. at 4.

The majority acknowledges the latter point, yet it contends that there is scant authority for Whole Foods' attempt to dismiss claims without dismissing parties. But my colleagues overlook the fundamental proposition that a named plaintiff attempting to bring a class action has two legally cognizable interests. The first is his underlying claim on the merits; the second is "the claim that he is entitled to represent a class." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 528 (D.C. Cir. 2006) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980)). That latter claim of entitlement is what courts adjudicate when considering motions for class certification. And if, as Whole Foods argues, its own challenge is aimed at claims independent of parties, that necessarily implies it is challenging the *named plaintiffs'* alleged entitlement *to bring* those claims on behalf of the putative class members. In other words, taking aim at the "claims asserted on behalf of nonresident putative class members," Op. at 12 (quoting Appellant's Br. at 7), is just a

---

[4] Acknowledging that the motion to dismiss is "unconventionally framed," the majority supports its reading with language from Whole Foods' opening brief on appeal. Op. at 11–12. That is doubly unfair. Not only must Whole Foods address an issue for the first time on appeal, but also it is penalized for the imprecise language it used before the characterization of the motion to dismiss was even at issue. If we are to consult any of Whole Foods' filings beyond the motion itself here, it should be the reply brief.

shorthand for attacking the named plaintiffs' ability to pursue those claims. The majority concedes that a district court would abuse its discretion by permitting nationwide discovery "on *claims* that Supreme Court precedent squarely foreclosed," Op. at 11 (emphasis added), so the majority implicitly also concedes that those "claims" exist independent of the putative class members before class certification.

Moreover, a motion challenging class representation need not wait until the plaintiffs move for class certification. *See* Fed. R. Civ. P. 23(c)(1)(A). The Supreme Court has recognized that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). If a named plaintiff's claim of entitlement to represent a class is defective as a matter of law, for example, because the court would lack personal jurisdiction over the defendant with respect to class claims, a defendant's motion to dismiss or narrow the representative claim on those grounds is not premature.[5] Granting such a motion would be the "functional equivalent" of denying a motion for class certification, and that decision would be a candidate for interlocutory appeal. *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110 n.2 (4th Cir. 2013); *see Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1711 n.7 (2017). Whole Foods' motion attacking the named plaintiffs' representative claim thus was not premature.

To be sure, as the majority points out, Whole Foods did not cite Rule 23 in its motion to dismiss. But that is of little

---

[5]Two of our sister circuits permit pleading-stage challenges to class allegations on motions that invoke Rule 12(b)(6). *See McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 444–45 (5th Cir. 2007).

significance. Whole Foods understandably relied on Rule 12(b)(2), which permits a party to "assert the . . . defense[]" of "lack of personal jurisdiction." If as a matter of law the named plaintiffs seek to bring claims in a representative capacity over which the district court lacks personal jurisdiction, the court's focus will not be on the requirements set out in Rule 23(a) and (b).

The majority's chief authority, *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), is quite beside the point. In *Smith*, the Supreme Court held that members of a failed proposed class are not "parties" for purposes of claim preclusion and therefore are not bound in later proceedings. *See id.* at 312–15. *Smith* may or may not settle the party status of putative class members for personal jurisdiction purposes,[6] but whether the putative class members are "parties" does not matter in this case: as I have explained, Whole Foods did not move to dismiss nonresident putative class members; it moved to dismiss the named plaintiffs' claim to represent those putative class members. *Smith* says nothing that would cast doubt on a district court's authority to rule on a named plaintiff's representative claim at the pleading stage. If anything, *Smith* removes a potential concern about pleading-stage challenges to claims of class entitlement since, in the absence of certification, putative class members will not be precluded by anything the court does. *Id.* In this case, for example, if Whole Foods were to succeed on its

---

[6]*Smith* did not purport to change the principle from *Devlin v. Scardelletti*, 536 U.S. 1 (2002), that the party status of unnamed class members "may differ based on context." *Id.* at 10. The more sweeping language in *Smith* upon which my colleagues repeatedly rely thus is arguably dictum. This is a minor point, however, since my principal contention is that the party status of putative class members is irrelevant to whether Whole Foods' motion was premature.

motion, nonresident putative class members would not be issue precluded on the question of personal jurisdiction in future suits.

I note that numerous district courts—not seeing *Smith* as a barrier—have ruled on the applicability of *Bristol-Myers* to class actions on motions invoking Rule 12(b)(2).[7] The district court (and the plaintiffs, for that matter) didn't bat an eye at Whole Foods' motion below because it was an appropriate pleading-stage challenge to the plaintiffs' class allegations.

If the majority were correct that such motions are premature, then a hypothetical named plaintiff would be entitled to extensive class discovery even after an on-point decision by

---

[7] *See, e.g.*, *Leppert v. Champion Petfoods USA Inc.*, No. 18 C 4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019); *Lee v. Branch Banking & Tr. Co.*, No. 18-21876-Civ-Scola, 2018 WL 5633995 (S.D. Fla. Oct. 31, 2018); *Morgan v. U.S. Express, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775 (W.D. Va. July 25, 2018); *Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342 (S.D. Fla. 2018); *Chavez v. Church & Dwight Co.*, No. 17 C 1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) (evaluating Rule 12(b)(6) motion under Rule 12(b)(2)); *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342 (M.D. Fla. 2018); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360 (N.D. Ga. 2018); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564, 2017 WL 4224723 (N.D. Cal. Sept. 22, 2017).

Other courts have considered the issue prior to certification on motions to strike allegations from the complaint. *See, e.g.*, *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298 (N.D. Ala. 2018); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815 (N.D. Ill. 2018). Whole Foods understandably invoked Rule 12(b)(2). But even if another Rule were a better fit, the named plaintiffs never objected to Whole Foods' use of Rule 12(b)(2), and I see no meaningful difference between the various plausible options in this context.

the Supreme Court concluding, as I do, that the principles in *Bristol-Myers* extend to class actions. In this case, for instance, the district court noted that "[d]iscovery . . . in its present form, promises to be drawn out, complex, and expensive." The plaintiffs intend to take discovery of payroll records from more than 200 Whole Foods grocery stores in order to certify the nationwide class. And if the alleged misconduct appears to extend to related operating companies, the plaintiffs intend to amend their complaint to expand the class to include employees of nearly 300 other stores. Then comes class discovery about *those* stores. If the named plaintiffs' nationwide class allegation is dismissed, however, that number shrinks to the five stores operated by Whole Foods in the District. As the district court put it, "[t]he difference in scope of these two scenarios need not be belabored." And, importantly, there may be incentives for plaintiffs to pursue that discovery effort even if the ultimate legal issue were settled.

The majority appears to concede that if a district court permitted extensive discovery in the face of a Supreme Court decision answering the certified question the way I do, it would constitute an abuse of discretion as a matter of law. But are not courts of appeals equally obliged to decide questions of law? There is no relevant difference, in other words, between a prior Supreme Court decision extending *Bristol-Myers* to class actions and a decision by this court to that effect. And why should the *Bristol-Myers* question be dealt with during discovery instead of at the pleading stage? If Whole Foods were to preserve and appeal a *Bristol-Myers*-based objection to the district court's nationwide discovery rulings, and if we agreed that *Bristol-Myers* applied, we would hold, like the majority says, that the district court abused its discretion by making an error of law. *See Koch v. Cox*, 489 F.3d 384, 388 (D.C. Cir. 2007). The majority thus simply has moved the district court's consideration of the effect of governing personal jurisdiction

rules on certain "claims" to the class discovery phase. Again I ask, what are these "claims," if not those of putative class members, used as a shorthand for the representative claim of the named plaintiffs? The majority does not say, but whatever the characterization of those claims, if a court can evaluate them for personal jurisdiction purposes at discovery, it can do the same at the pleading stage. And the latter is more appropriate in any event because, as I explained, an order granting Whole Foods' motion would be the functional equivalent of a denial of class certification and thus would be a candidate for interlocutory appeal. *See Scott*, 733 F.3d at 110 n.2; *Microsoft Corp.*, 137 S. Ct. at 1711 n.7.

**II.**

The issue that actually divided the parties below is what effect, if any, the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), has on class actions in federal courts. That question is the subject of the order that the district court certified. Whole Foods asserts that after *Bristol-Myers*, a class action—presumably in both state and federal court—cannot proceed against a defendant insofar as the suit includes claims of absent class members over which the court lacks personal jurisdiction. The plaintiffs, on the other hand, argue that *Bristol-Myers* doesn't apply to class actions at all, and that even if it does in state courts, it is inapplicable in this case because the Fifth Amendment and Federal Rule of Civil Procedure 23 permit expansive assertions of personal jurisdiction by federal courts.

In *Bristol-Myers*, the Supreme Court reaffirmed the constitutional limits on a state court's assertion of personal jurisdiction over an out-of-state *defendant*. *See* 137 S. Ct. at 1781. (I emphasize "defendant" because the Court made a point to distinguish *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797

(1985), which dealt with the due process rights of absent class member *plaintiffs*, as irrelevant. *See Bristol-Myers*, 137 S. Ct. at 1782–83.).

The Court reiterated that courts have general jurisdiction over a corporate defendant, and may hear any and all claims against it, in forums where that defendant is fairly regarded as at home. *Id.* at 1780. The place of incorporation and the principal place of business are the paradigm forums for exercising general jurisdiction over corporate defendants. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For Whole Foods, those forums are Texas and Delaware. (It is worth noting that the plaintiffs could have avoided this whole personal jurisdiction imbroglio simply by driving 110 miles down the road and filing this class action in Wilmington.) Other courts may exercise specific jurisdiction over the defendant only with respect to claims that arise out of or relate to the defendant's contacts with the forum. *See Bristol-Myers*, 137 S. Ct. at 1780–81.

Those principles were established prior to *Bristol-Myers*. *See id.* at 1779–81. *Bristol-Myers* rejected almost unanimously an effort by the California Supreme Court to relax the requirements of specific jurisdiction for eight suits brought by hundreds of joint plaintiffs—many of whom alleged injuries that had no connection with California. *Id.* at 1778, 1781. The California Supreme Court had applied what it called a "sliding scale approach" to specific personal jurisdiction. *Id.* at 1778. Under that approach, the greater the defendant's contacts with the forum, the less direct the connection needed to be between those contacts and the out-of-state claims. *See id.* at 1778–79. In light of Bristol-Myers' extensive contacts with the state, the state court concluded that it had specific jurisdiction over the out-of-state claims because they were similar in several ways to the in-state claims: they were based on the same allegedly

defective product, the same marketing, and the same promotion of that product. *Id.* at 1779. The Supreme Court disagreed, explaining that the existence of "similar" in-state claims was insufficient to support personal jurisdiction over the out-of-state claims. *See id.* at 1781. Due process protected Bristol-Myers from being haled into a state court on claims that had no independent connection to the forum. *Id.* at 1780–81.

Although the Supreme Court avoided opining on whether its reasoning in the mass action context would apply also to class actions, it seems to me that logic dictates that it does.[8] After all, like the mass action in *Bristol-Myers*, a class action is just a species of joinder, which "merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (plurality opinion). And since the requirements of personal jurisdiction must be satisfied independently for "the specific claims at issue," *Bristol-Myers*, 137 S. Ct. at 1781, I think that personal jurisdiction over claims asserted on behalf of absent class members must be analyzed on a claim-by-claim basis.

The plaintiffs argue, however, that the reasoning of *Bristol-Myers* does not apply to class actions (in state or federal court) because absent class members should not be considered "parties" for personal-jurisdiction purposes. The district court agreed, following the lead of other courts that have read *Bristol-Myers* to apply only to claims asserted by "real part[ies] in

---

[8]I have always been wary of Holmes's statement that the life of the law has not been logic, but experience. *See* Oliver Wendell Holmes, Jr., *The Common Law* 1 (1881). Experience, as Holmes readily conceded, includes considerations of *policy*. Such considerations may be appropriate in the common law and in Congress, but not in federal courts.

interest." *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C. 2018); *see id.* (collecting cases). But neither the plaintiffs, nor the district court, nor the courts upon which it relied sufficiently explain why party status matters. Some courts (and the plaintiffs here) focus on the Supreme Court's statements in *Devlin v. Scardelletti*, 536 U.S. 1 (2002), that absent class members may be parties for some purposes and not for others, because "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Id.* at 9–10; *see, e.g.*, *Bristol-Myers*, 137 S. Ct. at 1789 n. 4 (Sotomayor, J., dissenting); *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 819 (N.D. Ill. 2018). In *Devlin*, the Court was faced with the question whether absent class members can appeal a court-approved settlement. *Id.* at 7. But the reason why party status mattered in *Devlin* was that the Court had previously held that only parties to a lawsuit may appeal an adverse judgment. *See id.* I do not read *Devlin* to make party status the key to all disputes about absent class members.

Indeed, for the question at hand, the party status of absent class members seems to me to be irrelevant. The Court's focus in *Bristol-Myers* was on whether limits on personal jurisdiction protect a defendant from out-of-state *claims*, *see* 137 S. Ct. at 1781, and a defendant is subject to such claims in a nationwide class action as well. A court's assertion of jurisdiction over a defendant exposes it to that court's coercive power, so such an assertion must comport with due process of law. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011). A court that adjudicates claims asserted on behalf of others in a class action exercises coercive power over a defendant just as much as when it adjudicates claims of named plaintiffs in a mass action. After all, the goal of a nationwide class action is "a binding judgment over the defendant as to the claims of the entire nationwide class—and the deprivation of the

defendant's property accordingly." 2 William B. Rubenstein, Newberg on Class Actions § 6:26 (5th ed. 2019). And much like the class action mechanism cannot circumvent the requirements of Article III, *see Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring), it is not a license for courts to enter judgments on claims over which they have no power. A defendant is therefore entitled to due process protections—including limits on assertions of personal jurisdiction—with respect to all claims in a class action for which a judgment is sought. *See* 2 Rubenstein, Newberg on Class Actions § 6:26.[9]

The district court also distinguished *Bristol-Myers* on the ground that the present class action must eventually satisfy the requirements of Federal Rule of Civil Procedure 23, which, in its view, adequately protect a defendant's due process rights. Since Rule 23 ensures that a defendant will be presented with a "unitary, coherent claim," as one court put it, some have thought that it is not unfair to bring the defendant into a court where it will be sued on local claims anyway to provide a "unitary, coherent defense." *Sanchez v. Launch Tech. Workforce Sols.*, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018).

I do not think, however, that Rule 23's standards are an adequate substitute for normal principles of personal jurisdiction. On its face, the Rule primarily focuses on the relationship between the claims of the named representatives

---

[9]For the same reasons, even if the plaintiffs' broad reading of *Devlin* were correct (i.e., that party status is the relevant inquiry, one that depends on context), I would conclude that absent class members are parties for purposes of personal jurisdiction over the defendant. The relevant "context" here is the set of principles that limits courts from holding defendants liable for out-of-state claims, which is precisely the relief that this nationwide class action seeks.

and the absent class members.[10]  Much of it could be described as requiring sufficient similarity between those claims.[11]  But as described above, using the "similarity" of claims to relax the standards of personal jurisdiction was one of the mistakes that the state court made in *Bristol-Myers*.  *See* 137 S. Ct. at 1779, 1781.  The Supreme Court explained that even where the claims at issue are similar, limits on personal jurisdiction guard against more than just inconvenience for a defendant.  They go to "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question."  *Id.* at 1780.  In this case, for example, states where Whole Foods does only some of its business may have no connection to, and no legitimate interest in, claims arising from Whole Foods' dealings elsewhere.  Rule 23 and its state analogues offer no protection in that respect; limits on personal jurisdiction do.  To be sure, it may not immediately be apparent how that "more abstract" interest protected by limits on personal jurisdiction is implicated by a suit in federal court, but as I shall explain, Federal Rule of Civil Procedure 4(k)(1)(A) supplies the same concern for horizontal federalism.  For now, the point is that Rule 23 and its state analogues are not a substitute for normal limits on personal jurisdiction.

In the alternative, the plaintiffs contend that even if *Bristol-Myers* applies to class actions generally, federal courts are

---

[10]The Rule requires, *inter alia*, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and that the representative parties will fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a).

[11]*See* Fed. R. Civ. P. 23(a); *id.* R. 23(b)(3) (requiring that common questions of law or fact predominate over questions affecting only individual class members).

permitted by the Fifth Amendment and Rule 23 to exercise personal jurisdiction over the nationwide claims at issue here. Unlike in state courts, which are governed by the Fourteenth Amendment, due process limitations on federal courts are governed by the Fifth Amendment. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 54 (D.C. Cir. 2017). In both contexts, courts may exercise specific jurisdiction over a defendant only if the claims at issue arise out of or relate to the defendant's minimum contacts with the forum. *See id.* at 48, 54–55. The *scope* of the relevant contacts can differ between state and federal courts, however, because the relevant "forum" can differ. *Id.* at 55. The forum for a state court is the state itself. *Id.* But standing alone, the Fifth Amendment requires only that the claims at issue in a federal court arise out of the defendant's minimum contacts with the United States as a whole. *Id.*; *see In re Sealed Case*, 932 F.3d 915, 925 (D.C. Cir. 2019). Thus nothing in the Constitution would prevent Congress from authorizing a federal court to exercise specific personal jurisdiction over claims in this nationwide class action, so long as the claims arise out of Whole Foods' minimum contacts with the United States.

But Congress has done no such thing. Congress typically authorizes us to exercise personal jurisdiction by way of statutes or Rules that authorize service of process on a defendant. *See BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1555 (2017). The governing Rule in this case is Federal Rule of Civil Procedure 4(k)(1)(A), which reads in relevant part, "(1) *In General*. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." The effect of this provision is that in the absence of another statute or Rule expanding the reach of effective service of process, a district court's analysis of personal jurisdiction in a civil action will be identical to the Fourteenth Amendment inquiry undertaken by the relevant state

court.  *In re Sealed Case*, 932 F.3d at 924.  No other statute or Rule currently authorizes a more expansive assertion of personal jurisdiction in this case, *See* 2 Rubenstein, Newberg on Class Actions § 6:26, so the district court may exercise personal jurisdiction over Whole Foods only with respect to claims arising out of or relating to its contacts with the District of Columbia.[12]

The plaintiffs and an amicus contend that while Rule 4(k)(1)(A) limits the reach of the district court's personal jurisdiction over Whole Foods at the outset of the suit, the Rule has no force when absent class members' claims are later added to the suit at certification.  Otherwise, they argue, all class members would be required to serve process on Whole Foods at certification, which obviously is not the law.

This argument equates the method of service that Rule 4(k)(1) provides for initiating suits generally ("[s]erving a summons or filing a waiver of service") with the territorial limitations on amenability to service (and therefore personal jurisdiction) set out in that provision's subsections.  *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103 n.6 (1987) (distinguishing between the two).  The former applies only when the suit is initiated, but the latter remain operative throughout the proceedings.  Amended complaints, for example, are usually served on defendants pursuant to Rule 5(a)(1), but the claims they contain are still subject to the limits

---

[12]The Federal Rules of Civil Procedure treat the District of Columbia as a "state."  Fed. R. Civ. P. 81(d)(2).  The District, in turn, generally construes the relevant portions of its long-arm statute to be coextensive with the limits set by the Due Process Clause of the Fourteenth Amendment.  *See Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016); *Mouzavires v. Baxter*, 434 A.2d 988, 990–91 (D.C. 1981) (en banc) (per curiam).

of the applicable subsection of Rule 4(k)(1). *See, e.g.*, *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 902–03 (10th Cir. 2017) (evaluating amended complaint under Rule 4(k)(1)(A)). Otherwise, litigants could easily sidestep the territorial limits on personal jurisdiction simply by adding claims—or by adding plaintiffs, for that matter—after complying with Rule 4(k)(1)(A) in their first filing. That, too, is decidedly not the law. So while absent class members will not be required to serve process on Whole Foods under Rule 4(k)(1) at certification, the territorial limit on personal jurisdiction set out in Rule 4(k)(1)(A) will still be in effect. *See generally* A. Benjamin Spencer, *Out of the Quandary: Personal Jurisdiction Over Absent Class Member Claims Explained*, 39 Rev. of Litig. 31 (2019).

The continuing effect of Rule 4(k)(1)(A)'s territorial limitation at the class certification stage also rebuts the plaintiffs' contention that Rule 23 of its own force authorizes district courts to adjudicate nationwide claims. Rule 23's standards for certifying federal class actions do not address personal jurisdiction, either explicitly or implicitly. *Cf. In re Sealed Case*, 932 F.3d at 925. The same goes for the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d).

\* \* \*

The plaintiffs and an amicus contend that my conclusions would have a devastating impact on the viability of class actions. I think that prediction is vastly overstated. As I pointed out above, these plaintiffs could have brought a nationwide class action against Whole Foods in Delaware without any personal jurisdiction difficulties. *Cf. Bristol-Myers*, 137 S. Ct. at 1783. And Whole Foods employees may be able to file statewide class actions in their own respective states. *Cf. id.* Further, my views do not call into question the use of multidistrict litigation, since

cases subject to that process are eventually returned to their original courts for trial purposes. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34, 40 (1998); 28 U.S.C. § 1407(a).

Moreover, the limits that *do* follow from applying *Bristol-Myers* to class actions in federal court are no different from the limits that apply when individual plaintiffs sue on their own behalf, and that must be tolerated under current law. For example, it is true that plaintiffs likely would be unable to bring a unitary nationwide class action against two or more defendants who are subject to general jurisdiction in different states. *Cf. Bristol-Myers*, 137 S. Ct. at 1789 (Sotomayor, J., dissenting). And it is hard to see how a nationwide class action could proceed against a foreign defendant who is not subject to general jurisdiction anywhere in the United States, at least in diversity cases. *Cf. id*; Fed. R. Civ. P. 4(k)(2). But similarly an individual plaintiff—not a class action—ordinarily cannot bring these sorts of defendants into a court to answer to claims that have nothing to do with the forum. And procedural tools like class actions and mass actions are not an exception to ordinary principles of personal jurisdiction. The Court was apparently willing to live with the consequences of that fact in *Bristol-Myers*, *see* 137 S. Ct. 1789 (Sotomayor, J., dissenting), and we should do likewise.[13]

---

[13]Since the Court made clear in *Bristol-Myers* that it was merely applying settled law, 137 S. Ct. at 1781, 1783, it is rather puzzling that challenges to class actions on these grounds were not raised until recently. *Bristol-Myers* seems to have focused the attention of defendants on the *implications* of the Court's prior personal jurisdiction decisions.