# United States Court of Appeals
## For the First Circuit

No. 20-1997

JOHN WATERS,
individually and for others similarly situated,

Plaintiff, Appellee,

v.

DAY & ZIMMERMANN NPS, INC.

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Thompson, Dyk,* and Barron,
Circuit Judges.

David B. Salmons, with whom Michael J. Puma, James D. Nelson, and Morgan, Lewis & Bockius LLP were on brief, for appellant.
Richard J. (Rex) Burch, with whom Michael A. Josephson, Richard M. Schreiber, Taylor A. Jones, Bruckner Burch PLLC, and Josephson Dunlap LLP were on brief, for appellee.
Daryl Joseffer, Jonathan D. Urick, Nicole A. Saharsky, Andrew J. Pincus, Archis A. Parasharami, Minh Nguyen-Dang, and Mayer Brown LLP on brief for Chamber of Commerce of the United States of America, amicus curiae.

---

* Of the United States Court of Appeals for the Federal Circuit, sitting by designation.

January 13, 2022

**DYK, Circuit Judge.** John Waters filed suit for overtime wages pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, in the United States District Court for the District of Massachusetts. The defendant was Day & Zimmermann ("D&Z"), a company incorporated in Delaware that maintains its principal place of business in Pennsylvania.

Waters's suit alleged that D&Z failed to pay him and other similarly situated employees and former employees their FLSA-required overtime wages. In accord with the FLSA's procedures governing what are often referred to as "collective actions," more than 100 current and former D&Z employees from around the country filed "opt-in" consent forms with the district court electing to participate as plaintiffs in Waters' suit.

D&Z moved to dismiss for lack of personal jurisdiction. This motion was based on Bristol-Myers Squibb v. Superior Court of California ("BMS"), 137 S. Ct. 1773, 1779, 1781 (2017), holding that in view of the Fourteenth Amendment, state courts cannot entertain a state-law mass action—an aggregation of individual actions—if it includes out-of-state plaintiffs with no connection to the forum state. Here, the claims subject to the motion to dismiss were the claims of the current and former D&Z employees who had opted in to the collective action but, who, unlike Waters, had worked for the company outside of Massachusetts. Notwithstanding that D&Z had been properly served with process, it

claimed that under BMS, these claims could not be brought in a Massachusetts federal court, even though a federal court's jurisdiction is determined by the Fifth Amendment Due Process Clause. This is so, D&Z argued, because Federal Rule of Civil Procedure ("FRCP" or "Rule") 4(k)(1) independently limits a federal court's exercise of personal jurisdiction with respect to out-of-state opt-in claimants added after service of process has been effectuated. The district court denied D&Z's motion, declining to extend BMS's personal jurisdiction requirements to FLSA cases in federal court. Waters v. Day & Zimmermann NPS, Inc., 464 F. Supp. 3d 455, 461 (D. Mass. 2020).

On this interlocutory appeal, we now affirm the district court's denial of D&Z's motion.[1]

## I.

The following facts are not in dispute. Waters formerly worked for D&Z in Plymouth, Massachusetts. He served as a mechanical supervisor for the company, which provides services to power plants.

On July 22, 2019, Waters filed an FLSA-based "collective action" complaint against D&Z. That complaint alleged that D&Z violated the FLSA's overtime-wage provisions, see § 207(a)(1), because it "paid Waters and other workers like him the same hourly

---

[1] We acknowledge with appreciation the assistance of the amicus curiae in this case.

- 4 -

rate for all hours worked, including those in excess of 40 in a workweek." Waters sought unpaid overtime wages as liquidated damages, and attorneys' fees on behalf of himself and "the Putative Class Members."

About two weeks later, on August 8, 2019, Waters served the complaint on D&Z pursuant to 4(c) of the FRCP, utilizing the provisions of Massachusetts' long-arm statute. Mass. Gen. Laws ch. 223A, § 3. The following month, others claiming to be current or former D&Z employees filed written "opt-in" consent forms pursuant to § 216(b) in the district court to participate in the collective action that Waters had filed.

The standard opt-in consent form contained the following language:

1. I hereby consent to participate in a collective action lawsuit against Day & Zimmermann to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

- 5 -

To date, over 100 opt-ins claiming to be current and former D&Z employees have filed consent forms electing to participate in the FLSA collective action that Waters filed.

On September 12, 2019, D&Z moved pursuant to FRCP 12(b)(2) to dismiss the claims of those opt-ins who had not been employed by D&Z in Massachusetts. D&Z explained that, in so moving, it did not seek to "challenge personal jurisdiction as to the named Plaintiff's [i.e., Waters's] individual claim, as he allege[d] that he previously worked for [D&Z] in Massachusetts." Nor did D&Z contend that it had not properly been served with process or that anyone other than the named plaintiff was required to serve D&Z with process. Instead, D&Z's motion and accompanying memorandum of law claimed that BMS required the dismissal of the opt-in claims because the district court lacked either general or specific personal jurisdiction as to those claims.

In BMS, the Supreme Court held that the Fourteenth Amendment's Due Process Clause prevented a California state court from exercising specific personal jurisdiction over nonresident plaintiffs' state-law claims when those claims had no connection to the forum state. 137 S. Ct. at 1781. The decision expressly reserved the separate question "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1784.

On June 2, 2020, the district court here denied D&Z's motion to dismiss the opt-in claims based on BMS. It determined that the Supreme Court's ruling in that case had no bearing on its exercise of personal jurisdiction over the opt-ins because Waters's suit was brought in federal court pursuant to the FLSA's provisions governing collective actions, and the opt-ins had joined his suit in accord with that statute's procedures for doing so. Waters, 464 F. Supp. 3d at 461. In reaching this decision, the district court noted that BMS was "specifically limited to 'the due process limits on the exercise of specific jurisdiction by a State'" and did not resolve "whether the Fifth Amendment imposes the same restrictions" on a federal court. Id. (quoting BMS, 137 S. Ct. at 1783-84).

Following the denial, D&Z moved in the district court for a certificate of appealability under 28 U.S.C. § 1292(b), which the district court granted, see Waters v. Day & Zimmermann NPS, Inc., No. 19-cv-11585-NMG, 2020 WL 4754984, at *1 (D. Mass. Aug. 14, 2020). This court granted D&Z's timely petition for permission to bring an interlocutory appeal on October 14, 2020.[2] We have appellate jurisdiction under 28 U.S.C. § 1292(b).

---

[2] The district court has stayed the proceedings below pending our resolution of D&Z's interlocutory appeal.

Before addressing the merits of D&Z's appeal, we first consider an issue that neither party raises, but that could affect our appellate jurisdiction: whether the opt-in plaintiffs were parties to the action in the district court. If the dismissed opt-in plaintiffs were not parties to the action, we may lack jurisdiction to consider the propriety of their dismissal. See Campbell v. City of Los Angeles, 903 F.3d 1090, 1105 (9th Cir. 2018) ("All 'those that properly become parties[] may appeal an adverse judgment.'" (quoting Marino v. Ortiz, 484 U.S. 301, 304 (1988))). The opt-ins' party status hinges on the question whether they become parties as a result of filing opt-in notices, or they could become parties only after the district court conditionally certified that they were "similarly situated."

The FLSA provides that employees serving as named plaintiffs can bring collective actions on "behalf of . . . themselves and other employees similarly situated." § 216(b). The FLSA does not provide for conditional certification, but in the "absence of statutory or case law guidance," district courts at or around the pleading stage have developed a "loose consensus" regarding conditional certification procedures. Campbell, 903 F.3d at 1108-09. This process entails a "lenient" review of the pleadings, declarations, or other limited evidence, id. at 1109 (citation omitted), to assess whether the "proposed members of a

collective are similar enough to receive notice of the pending action," Swales v. KLLM Transp. Servs., L.L.C., 985 F.3d 430, 436 (5th Cir. 2021).

Conditional certification has no bearing on whether the opt-in plaintiffs become parties to the action. The FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." § 216(b). This provision makes clear that in collective actions, opt-in plaintiffs become parties to the proceedings when they give "consent in writing to become such a party and such consent is filed in the court."[3] Id.

Conditional certification cannot be the cornerstone of party status because it is not a statutory requirement; rather, certification "is a product of interstitial judicial lawmaking or

---

[3] The relevant portion of subsection (b) reads as follows, in part:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

ad hoc district court discretion . . . nothing in section 216(b) expressly compels it." Campbell, 903 F.3d at 1100; see also Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("Thus 'certification' is neither necessary nor sufficient for the existence of a representative action under [the] FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 174 (1989))).

Both the Supreme Court and nearly all of our sister circuits that have considered the question agree that opt-in plaintiffs become parties to the action without regard to conditional certification. Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013), concerned the justiciability of an FLSA collective action when the named plaintiff's claims became moot and no opt-in plaintiffs had joined in the action prior to that occurring. See Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 197 (3d Cir. 2011) (noting that "no other potential plaintiff ha[d] opted in to the suit"). The Supreme Court rejected the idea that the action was not moot because it could be remanded to conditionally certify the collective, since "'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become

parties to a collective action only by filing written consent with the court." Genesis Healthcare, 569 U.S. at 75 (first citing Hoffmann-La Roche, 493 U.S. at 171-72; then citing § 216(b)).

Almost all circuits to address this issue interpret the statute as making opt-in plaintiffs parties to the action as soon as they file consent forms. See, e.g., Campbell, 903 F.3d at 1104 ("The FLSA leaves no doubt that 'every plaintiff who opts in to a collective action has party status.'" (quoting Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 225 (3d Cir. 2016))); Mickles v. Country Club Inc., 887 F.3d 1270, 1278 (11th Cir. 2018) ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required."); Simmons v. United Mortg. and Loan Inv., LLC, 634 F.3d 754, 758 (4th Cir. 2011) ("[I]n a collective action under the FLSA, a named plaintiff represents only himself until a similarly-situated employee opts in as a 'party plaintiff' by giving 'his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" (quoting § 216(b)); Anson v. Univ. of Tex. Health Sci. Ctr. at Hous., 962 F.2d 539, 540 (5th Cir. 1992) ("Under Section 216(b), an employee may become an 'opt-in' party plaintiff to an already filed suit by filing written consent with the court where the suit is pending."). D&Z also agrees that once an opt-in plaintiff "file[s] their consent

- 11 -

with the court, [they] have full party status." Appellant's Br. 26 (emphasis in original); see also id. at 2.

The sole possible exception to the general recognition that opt-in plaintiffs become parties to the action upon filing consent forms is the Seventh Circuit's decision in Hollins v. Regency Corp., 867 F.3d 830, 833 (7th Cir. 2017), which held that appellate review of a named plaintiff's adverse summary judgment decision was not precluded by the presence of other parties when "the collective action has never been conditionally certified and the court has not in any other way accepted efforts by the unnamed members to opt in or intervene." The decision attributed significance to the district court's failure to conditionally certify the collective action, or to "accept[] efforts by the unnamed members to opt in or intervene." Id. at 833-34. There is no indication that the Hollins court would find lack of party status in a case like this, in which the opt-in forms were accepted as filed by the district court.

Although Canaday v. Anthem Cos., 9 F.4th 392 (6th Cir. 2021), and Vallone v. CJS Solutions Group, 9 F.4th 861 (8th Cir. 2021), reached a different ultimate result on the question of personal jurisdiction, both support our view that the dismissed opt-in plaintiffs were parties to the action. In Canaday and Vallone, the Sixth and Eighth Circuits faced the same BMS-based personal jurisdiction challenge that D&Z raises now. In those

cases, opt-in plaintiffs had joined the action by filing consent forms. Both district courts resolved the defendants' personal jurisdiction challenges and dismissed the out-of-state opt-in claims before reaching the merits of the in-state plaintiffs' requests for conditional certification, signifying that it was not necessary to decide the certification issue first. See Canaday v. Anthem Cos., 439 F. Supp. 3d 1042, 1049 (W.D. Tenn. 2020); Vallone v. CJS Sols. Grp., 437 F. Supp. 3d 687, 691 (D. Minn. 2020). The Sixth Circuit explicitly agreed that the nonresident opt-in plaintiffs became parties regardless of conditional certification, stating that "[o]nce they file a written consent, opt-in plaintiffs enjoy party status as if they had initiated the action," Canaday, 9 F.4th at 394, and "once they opt in, these plaintiffs become 'party plaintiff[s]' . . . enjoying 'the same status in relation to the claims of the lawsuit as do the named plaintiffs,'" id. at 402-03 (first quoting § 216(b); then quoting Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2003)).[4]

We note that collective actions are distinct from FRCP 23 class actions in that the latter's putative class members do not become parties until after certification, see Smith v. Bayer Corp., 564 U.S. 299, 315 (2011), and putative class members who have not intervened in an action cannot appeal denials of class

[4] The Eighth Circuit did not appear to address this question but did not disagree with the district court's approach.

- 13 -

certification, Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 330, 332 n.5 (1980) (citing United Airlines, Inc. v. McDonald, 432 U.S. 385 (1977)); see also Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293, 298 (D.C. Cir. 2020) ("Putative class members become parties to an action—and thus subject to dismissal—only after class certification."). These Rule 23 class action cases have no bearing on whether the opt-in plaintiffs here became parties to the action.

In short, the FLSA's text, Supreme Court precedent, and a majority of circuit court decisions compel only one conclusion: the opt-ins who filed consent forms with the court became parties to the suit upon filing those forms. Nothing else is required to make them parties. Because more than 100 current and former D&Z employees filed consent waivers in the district court, there are that many opt-in party-plaintiffs before this court. We proceed to decide whether the district court properly denied D&Z's motion to dismiss the nonresident opt-in claims for lack of personal jurisdiction.

**III.**

D&Z argues that BMS requires our dismissal of the nonresident opt-in claims because the Massachusetts district court lacked either general or specific personal jurisdiction as to those claims. A detailed description of BMS provides helpful context. In BMS, a group of nearly 700 plaintiffs filed eight separate complaints in California state court alleging state-law products

liability, negligent misrepresentation, and misleading advertising claims. 137 S. Ct. at 1778. The plaintiffs' purported injuries all stemmed from Plavix, a drug manufactured and sold by BMS. Id. Pursuant to a California procedural rule that permitted post-hoc consolidation of the eight separate complaints, the plaintiffs combined their suits into one mass-tort action.[5] See Bristol-Myers Squibb Co. v. Superior Court of California, 175 Cal. Rptr. 3d 412, 416 (Ct. App. 2014). The combined suit consisted of a majority of non-resident plaintiffs, none of whom obtained Plavix in California, used the drug there, or received treatment for their injuries there. Id. BMS did, however, sell 187 million Plavix pills in California, and it earned more than $900 million from those sales. Id.

Citing these "extensive contacts with California" and the similarity of the resident and nonresident claims, the California Supreme Court held that the state could properly exercise specific jurisdiction over the mass-action. Id. at 1779. Rejecting this conclusion, the U.S. Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibits state courts from exercising specific personal jurisdiction over state-law claims asserted by nonresident plaintiffs absent a "connection

---

[5] In California, "coordination" allows complex civil actions that are "pending in different courts," but that share "a common question of fact or law" to be consolidated in one proceeding. Cal. Civ. Proc. § 404.

between the [state] forum and the specific claims at issue." Id. at 1781, 1783. Similarities between the nonresident claims and the claims of residents or those who were injured in California were insufficient to establish that connection. Id. at 1781.

The decision emphasized that the "burden on [a] defendant"—the "primary concern" animating jurisdictional restrictions—encompasses more than just the "practical problems resulting from litigating in the forum." Id. at 1780. These restrictions also protect defendants from "submitting to the coercive power of a State that may have little legitimate interest in the claims in question," a "federalism interest" that is "at times . . . decisive." Id. The Supreme Court explained:

> [E]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

Id. at 1780-81 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 294 (1980)).

The Court's reasoning in BMS rests on Fourteenth Amendment constitutional limits on state courts exercising jurisdiction over state-law claims. Here, it is agreed that the Fourteenth Amendment does not directly limit a federal court's

- 16 -

jurisdiction over purely federal-law claims. Rather, as a constitutional matter, the "constitutional limits" of a federal court's jurisdiction over federal-law claims "are drawn in the first instance with reference to the [D]ue [P]rocess [C]lause of the [F]ifth [A]mendment," a point which D&Z concedes, as it must. See Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991). The Fifth Amendment does not bar an out-of-state plaintiff from suing to enforce their rights under a federal statute in federal court if the defendant maintained the "requisite 'minimum contacts' with the United States."[6] See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992). There is no contention here that the opt-in plaintiffs lack such contacts with the United States; that the Fifth or Fourteenth Amendments themselves bar suit by the non-resident opt-in plaintiffs; or that BMS directly governs a suit in federal court under a federal statute, such as this one. Nor is there any contention that D&Z was not properly served with process pursuant to FRCP 4(c) and the Massachusetts long-arm statute.

Nonetheless, D&Z claims that the Fifth Amendment is "wholly irrelevant" to the personal jurisdiction question before

---

[6] "Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 884 (2011) (plurality opinion).

us—notwithstanding that this is a federal question case being heard in federal court—because Rule 4(k) "incorporates the Fourteenth Amendment's limits on the jurisdiction of federal courts wherever a federal statute does not provide for nationwide service of process." In other words, they propose that Rule 4 is not concerned merely with service of process, but with personal jurisdiction generally. Thus, D&Z argues, because there is no dispute that the FLSA does not authorize nationwide service of process, Rule 4(k) independently makes the holding of BMS applicable to the FLSA opt-ins.

This argument depends on the contention that Rule 4(k)(1) governs not just service of a summons, but also limits a federal court's jurisdiction after the summons is properly served. We must decide whether D&Z is right that Rule 4(k)(1) operates as a free-standing limitation on the exercise of personal jurisdiction in collective actions such as those enabled by the FLSA. We do not find D&Z's contention persuasive, as we now discuss.

## IV.

The question before us is one of rule interpretation. As such, our review is de novo. See Sam M. ex rel. Elliott v. Carcieri, 608 F.3d 77, 86 (1st Cir. 2010) (citing NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 5 (1st Cir. 2002)).

**A.**

We start with the relevant text. The text reveals that Rule 4 is limited to setting forth various requirements for effectively serving a summons on a defendant in federal court, thereby establishing personal jurisdiction over the defendant. BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1556 (2017) ("[A] basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction." (citing Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)); see also Walden v. Fiore, 571 U.S. 277, 283 (2014) ("[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant."); Canaday, 9 F.4th at 395 ("Over time, service of process became a prerequisite for obtaining authority over a defendant, making it appropriate to say that 'service of process conferred jurisdiction.'" (quoting Burnham v. Superior Ct. of Cal., 495 U.S. 604, 613 (1990))).

Indeed, Rule 4's title, "Summons," suggests that it is concerned only with service. The notes accompanying the committee's 1993 amendment to Rule 4 reveal that the title was changed from "Process" to "Summons" to show that the rule's requirements "applie[d] only to that form of legal process." Amendments to Fed. R. Civ. P. 4, 146 F.R.D. 401, 559 (1993).

Turning to subsection (k) of Rule 4, it is apparent that it addresses an aspect of how a summons may be served. Like the

- 19 -

rule as a whole, it, too, bears a title that adverts to the requirements for effecting service of a summons: "Territorial Limits of Effective Service." Specifically, paragraph (1) of subsection (k) limits the instances in which "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant":

> (k) Territorial Limits of Effective Service.
>
>> (1) In General. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>>
>>> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>>>
>>> (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
>>>
>>> (C) when authorized by federal statute.

Fed. R. Civ. P. 4(k)(1)(A)–(C) (emphasis added). Thus, while the text states that personal jurisdiction can be "establishe[d]" by "[s]erving a summons" so long as any of these three criteria is met, it nowhere suggests that Rule 4 deals with anything other than service of a summons, or that Rule 4 constrains a federal court's power to act once a summons has been properly served, and personal jurisdiction has been established.

We see no textual basis in Rule 4 for concluding that the district court's exercise of jurisdiction over the opt-in

- 20 -

claims would be improper when "there is no dispute the named plaintiff properly served [D&Z]" by serving a summons in accord with Rule 4(c); D&Z does not contend that such service failed to satisfy the territorial limits of Rule 4(k)(1)(A) given that Waters had been employed by D&Z in Massachusetts; see United Electric, 960 F.2d at 1087 (citing Mass. Gen. Laws ch. 223A, § 3), and D&Z conceded that the opt-ins are not "responsible" for serving a summons.[7]

To be sure, Rule 4(k)(1)(A) does make the due process standard of the Fourteenth Amendment applicable to federal-question claims in federal court when a plaintiff relies on a state long-arm statute for service of the summons. Rule 4(k)(1)(A) requires looking to state law to determine whether service is effective to confer jurisdiction, and "because state law is subject to Fourteenth Amendment limitations, the minimum contacts doctrine, while imposing no direct state-by-state constraint on a federal court in a federal question case, acts indirectly as a governing mechanism for the exercise of personal jurisdiction." United Electric, 960 F.2d at 1086. But this is not the same thing as saying that Rule 4 or the Fourteenth Amendment governs district

---

[7] The Sixth Circuit in Canaday agreed that the opt-ins have no service obligations under Rule 4. 9 F.4th at 399-400 ("After Anthem appeared in the case in response to Canaday's service of the complaint, it is true, the nonresident plaintiffs . . . had no additional service obligation under Civil Rule 4(k).").

court jurisdiction in federal question cases after a summons has been properly served; had it been the FRCP drafters' intention to have Rule 4 govern more than the service of a summons, they could have simply said that additional plaintiffs may be added to an action if they could have served a summons on a defendant consistent with Rule 4(k)(1)(A). But that was not the choice the drafters made, and for good reason. It would be anomalous to apply the Fourteenth Amendment, rather than the Fifth Amendment, to federal causes of action after a summons is properly served.[8] Significantly, FRCP 82 also states that "[t]hese rules do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82; see also Miss. Publ'g Corp. v. Murphree, 326 U.S. 438, 445 (1946) ("Rule [4(k)(1)(A)] serves only to implement the jurisdiction . . . Congress has conferred, by providing a procedure by which the defendant may be brought into court at the place where Congress has declared that the suit may be maintained.")

---

[8] The dissent cites various law review articles suggesting changes to Rule 4(k) that would expand the jurisdiction of federal courts. See Scott Dodson, Personal Jurisdiction and Aggregation, 113 Nw. U. L. Rev. 1, 37-40 (2018); see also Stephen E. Sachs, How Congress Should Fix Personal Jurisdiction, 108 Nw. U. L. Rev. 1301, 1316 (2014); A. Benjamin Spencer, The Territorial Reach of Federal Courts, 71 Fla. L. Rev. 979, 990-91 (2019). With one exception, see infra note 12, none of the articles discusses the particular issue addressed here: whether Rule 4(k) continues to apply after service of process has been effectuated.

**B.**

Apart from the text of Rule 4(k), its history shows that its limited purpose was to govern service of a summons, not to limit the jurisdiction of the federal courts after a summons has been served. The first version of Rule 4(f), (now Rule 4(k)) entitled "Territorial Limits of Effective Service," required that for process to be effectively served, it must be physically served "anywhere within the territorial limits of the state in which the district court is held" unless a federal statute authorized service "beyond the territorial limits of that state." Fed. R. Civ. P. 4(f) (1937). This geographical limit prevented a plaintiff from serving a defendant anywhere outside of the state in which the underlying lawsuit would take place, consistent with the then-geographically-based concept of "tag" jurisdiction. See Pennoyer v. Neff, 95 U.S. 714, 733 (1878).

Due to the "changes in the technology of transportation and communication, and the tremendous growth of interstate business activity," business operations transcended the bounds of any one state, rendering jurisdiction based on physical presence largely obsolete. Daimler AG v. Bauman, 571 U.S. 117, 126 (2014) (quoting Burnham, 495 U.S. at 617). Responding to this change, International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 221 U.S. 457, 463 (1940)), eliminated the physical presence requirement, holding that Fourteenth

Amendment due process is satisfied for jurisdictional purposes when a defendant has "certain minimum contacts [with the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

The 1963 version of Rule 4(f), also entitled "Territorial Limits of Effective Service," reflected the principles set forth in International Shoe. Citing "[a]n important and growing class of State [long-arm] statutes [that] base personal jurisdiction over nonresidents on the doing of acts or on other contacts within the State," Rule 4 was amended to "expressly allow[] resort in original Federal actions to the procedures provided by State law for effecting service on nonresident parties." Amendments to Fed. R. Civ. P. 4, 31 F.R.D. 587, 627-28 (1963). Specifically, Rule 4(f) was "amended to assure the effectiveness of service outside the territorial limits of the State" when allowed by state law. Id. at 629 (emphasis added). The amended text allowed process to be served "anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state." Id. at 594.

Later amendments to other provisions of Rule 4 also show that the rule evolved to simplify service, not to govern jurisdiction after service. The 1980 amendments expanded the

category of individuals who could act as process servers from marshals, deputies, and individuals specifically appointed by the court to include any person "authorized to serve process in an action brought in the courts of general jurisdiction of the state in which the district court is held or in which service is made." Amendments to Fed. R. Civ. P. 4, 85 F.R.D. 521, 524 (1980). Despite this expansion, the 1983 amendments recognized that the job of serving process still largely fell on marshals in states that did not authorize additional process servers, and they also reflected views that mail service and other methods of service prescribed by state law were of paramount importance. Amendments to Fed. R. Civ. P. 4, 96 F.R.D. 81, 118-19 (1983). The 1983 amendments overhauled Rule 4(c) (now Rule 4(c), (e)) to allow a summons to "be served by any person who is not a party and is not less than 18 years of age" and permitted service "by mailing a copy of the summons . . . to the person to be served." Id. at 82-83. In response to efforts to "delete[] the provision" authorizing service pursuant to the law of the forum state, the 1983 amendments "saw no reason to forego systems of service that had been successful in achieving effective notice," and incorporated that provision into the new version of Rule 4(c). Id. at 83, 119.

The final amendment to Rule 4(k) occurred in 1993. Subdivision (f) became subdivision (k), and the committee notes emphasized that the amendment's purpose was to "facilitate the

service of the summons and complaint" and to "explicitly authorize[] a means for service of the summons and complaint on any defendant." 146 F.R.D. at 558. The amended rule "retain[ed] the substance of the former rule" by "explicitly authorizing the exercise of personal jurisdiction over persons who can be reached under state long-arm law." Id. at 570.

The fact that 4(k)(1)(A) provides that "service of a summons" establishes personal jurisdiction over defendants by utilizing a given state's long-arm statute incorporating Fourteenth Amendment requirements does not show that the Fourteenth Amendment applies to federal-law claims after service is satisfied. See 4 Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1007 (4th ed. 2021) ("The rule was also amended to clarify when service of a summons would establish personal jurisdiction in federal court."). In fact, the advisory committee notes make clear that a federal court's jurisdiction once service has been effectuated is determined by the Fifth Amendment's Due Process Clause at least in federal actions. 146 F.R.D. at 566 ("Service of the summons under this subdivision does not conclusively establish the jurisdiction of the court over the person of the defendant. A defendant may assert the territorial limits of the court's reach set forth in subdivision (k), [i.e. whether the service is effective under state or federal law to confer jurisdiction] including the

constitutional limitations that may be imposed by the Due Process Clause of the Fifth Amendment."). Thus, although serving a summons in accordance with state or federal law is necessary to establish jurisdiction over a defendant in the first instance, the Fifth Amendment's constitutional limitations limit the authority of the court after service has been effectuated at least in federal-law actions.

## C.

Another reason that we cannot read Rule 4(k)(1)(A) as limiting the court's authority over the added plaintiffs is that FRCP 20 already defines that authority. Rule 20 sets the limit for allowing additional parties to join a pre-existing lawsuit, permitting joinder of those parties with claims arising out of the "same transaction [or] occurrence" and presenting common "question[s] of law or fact." Fed. R. Civ. P. 20(a)(1)(A), (B). The FLSA's "similarly situated" limitation for collective actions displaces Rule 20 and limits the range of individuals who may be added as opt-in plaintiffs by requiring that they be "similarly situated." See, e.g., Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563, 569 (1st Cir. 2012) (The similarly situated "requirement is even less stringent than the test for party joinder" (citations omitted)); Campbell, 903 F.3d at 1104-05 ("The natural parallel is to plaintiffs . . . later added under the ordinary rules of party joinder."); Chamber of Comm. Br. 12 ("[T]he FLSA's opt-in provision

- 27 -

is properly viewed as a rule of joinder." (citation omitted)). We are not aware of, and D&Z has not cited, a case in which a court held that Rule 4 applies to plaintiffs joined under Rule 20.

Finally, the FLSA and its legislative history show that Congress created the collective action mechanism to enable all affected employees working for a single employer to bring suit in a single, collective action. The FLSA's purpose was to allow efficient enforcement of wage and hour laws against large, multi-state employers, a "broad remedial goal" that the Supreme Court has instructed "should be enforced to the full extent of its terms." Hoffman-La Roche, 493 U.S. at 173.

The FLSA's original premise was to target those employers engaged in interstate commerce, defined as "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." Fair Labor Standards Act of 1938, ch. 676, § 3(b), 52 Stat. 1060. Specifically, the legislative history evinces congressional intent to "provide a living wage" for workers at large, multi-state businesses, such as Sears Roebuck, General Motors, and Coca-Cola. 82 Cong. Rec. 1815-16 (1937) (remarks of Rep. Adolph Sabath); see also 93 Cong. Rec. 2182 (1947) (remarks of Sen. Donnell) (contemplating a suit in which "John Smith files a suit on behalf of himself and all other employees of the United States Steel Corporation" (emphasis added)). The congressional debates also

reveal a clear intent for a collective action to allow a "suit by one or more employees, for himself and all other employees similarly situated," regardless of the state in which they were employed. Id. (emphasis added).

Interpreting the FLSA to bar collective actions by out-of-state employees would frustrate a collective action's two key purposes: "(1) enforcement (by preventing violations and letting employees pool resources when seeking relief); and (2) efficiency (by resolving common issues in a single action)." Swales, 985 F.3d at 435 (citing Bigger v. Facebook, 947 F.3d 1043, 1049 (7th Cir. 2020)); see also Hoffman-La Roche, 493 U.S. at 170 ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

Holding that a district court lacks jurisdiction over the non-resident opt-in claims would "force[] those plaintiffs to file separate lawsuits in separate jurisdictions against the same employer based on the same or similar alleged violations of the FLSA." Canaday, 9 F.4th at 415-16 (Donald, J., dissenting). That is not what the FLSA contemplated.

**V.**

As we have noted earlier, the Sixth and Eighth Circuits, faced with <u>BMS</u>-based personal jurisdiction challenges to FLSA collective actions, disagree with the decision that we reach today. Neither decision suggests that the Fourteenth Amendment directly limits federal-court authority to entertain multi-state collective actions. Both opinions instead rely on an erroneous reading of Rule 4, and fail to successfully confront the fact that Rule 4(k) is a "territorial limit" on "effective service" of a summons, and thus logically cannot be read to limit a federal court's jurisdiction after a summons is properly served.

In this respect, the Eighth Circuit, with little discussion, reached the same result as the Sixth Circuit, ruling it "a given" that the Fourteenth Amendment, by way of Rule 4, limited the court's jurisdiction with respect to all of the claims, including those of the opt-in plaintiffs. <u>Vallone</u>, 9 F.4th at 865. The Sixth Circuit opinion is more expansive.[9] It concluded that even for "amended complaints and opt-in notices, the district court remains constrained by . . . the host State's [] personal jurisdiction limitations." <u>Canaday</u>, 9 F.4th at 400 (citing <u>Tamburo</u> v. <u>Dworkin</u>, 601 F.3d 693, 700-01 (7th Cir. 2010)). But <u>Tamburo</u>, the only case cited in support of this proposition, is silent on

---

[9] The Sixth Circuit's decision was an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). <u>See</u> <u>Canaday</u>, 9 F.4th at 395.

whether Rule 4 concerns the scope of personal jurisdiction after service of a summons. The case involved only a single, original plaintiff and the original defendants. The sole plaintiff served a summons under Rule 4 and the state's long-arm statute. See 601 F.3d at 698, 700. Since the personal jurisdiction issue in Tamburo concerned only the original plaintiff's state-law claims, id. at 700-01, the court had no occasion to consider its jurisdiction over federal claims or parties added after a summons was properly served.[10]

The other authorities relied on by the Sixth Circuit do not come close to addressing whether 4(k) and the Fourteenth Amendment apply to federal-law claims after a summons has been properly served pursuant to a state long-arm statute.[11] See Handley v. Ind. & Mich. Elec. Co., 732 F.2d 1265, 1269 (6th Cir. 1984) (affirming district court's exercise of jurisdiction over nonresident defendant served by original plaintiff pursuant to

---

[10] The Seventh Circuit affirmed the district court's 12(b)(6) dismissal of the federal-law claims before addressing personal jurisdiction over the state-law claims. Tamburo, 601 F.3d at 699–700.

[11] The dissent here also cites Old Republic Insurance Co. v. Continental Motors, Inc., 877 F.3d 895, 902-03 (10th Cir. 2017), for the proposition that a "plaintiff's amended complaint is 'the operative one' for the purpose of analyzing" a defendant's motion to dismiss for lack of personal jurisdiction. Old Republic is similar to Tamburo, as it also involved neither federal claims nor the application of Rule 4 to parties added after service of process had been effectuated.

Rule 4); SEC v. Ross, 504 F.3d 1130, 1138-40 (9th Cir. 2007) (holding that a court lacked jurisdiction over a defendant who was never served with or named as a party in the federal-law complaint, despite statute's nationwide service of process provision).[12]

The Sixth Circuit opinion rests on a supposed anomaly resulting from our interpretation—that added parties and added claims are not subject to Rule 4's limitations. The Sixth Circuit warned that reading Rule 4(k)(1)(A) as applying only to plaintiffs responsible for serving a summons risks "limitations on judicial power [being] one amended complaint—with potentially new claims and new plaintiffs—away from obsolescence." Canaday, 9 F.4th at 400; see also Molock, 952 F.3d at 309 (Silberman, J., dissenting) (suggesting that Rule 4(k) must be interpreted broadly to ensure that "litigants [cannot] easily sidestep the territorial limits on personal jurisdiction simply by adding claims—or by adding plaintiffs, for that matter—after complying with Rule 4(k)(1)(A) in their first filing").

---

[12] The opinion also relied on an article that states "courts regularly apply Rule 4(k)(1)(A) limitations to the claims appearing in amended complaints," but this proposition is also supported only by Tamburo. See A. Benjamin Spencer, Out of the Quandary: Personal Jurisdiction Over Absent Class Member Claims Explained, 39 REV. LITIG. 31, 43-44 (2019). Another statement cited in Canaday, see 9 F.4th at 400, that "Rule 4(k) remain[s] the operative constraint[] that district courts apply to . . . new claims by newly joined parties," cites the same article, which cites no support, see 39 REV. LITIG. at 44.

There is no anomaly. As discussed above, Rule 4 is concerned with initial service, not jurisdictional limitations after service. And the consequence is not that additional parties and claims can be added to escape jurisdictional limitations. In both the case of added parties and claims, the court's jurisdiction is still subject to constitutional limitations—in the case of federal-law claims, the Fifth Amendment—and statutory limitations governing subject matter jurisdiction and venue. See 7 Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1659 (3d ed.) ("[T]he statutory jurisdiction and venue requirements are fully applicable to Federal Rule of Civil Procedure 20 and may restrict the ability to join parties.")[13] If there is any anomaly, it is the approach suggested by the Sixth Circuit—applying the Fourteenth Amendment to federal-law claims that are governed only by the Fifth Amendment.

The Sixth Circuit also relied on the FLSA's failure to authorize nationwide service of process, urging that because the FLSA lacks a nationwide service of process provision, that left Rule 4(k)(1)(A) as the only basis for establishing jurisdiction. See Canaday, 9 F.4th at 396. We agree that "a basis for service

---

[13] Also, claims "radically different from those set out in the original pleading," may require courts to "direct personal service of the new pleading on the [defendant] pursuant to Rule 4." 4B Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1146 (4th ed.).

- 33 -

of a summons on the defendant is prerequisite to the exercise of personal jurisdiction," BNSF, 137 S. Ct. at 1556 (citing Omni Capital, 484 U.S. at 104), and 4(k)(1)(A) is the sole basis for service when nationwide service is not authorized. But the absence of a nationwide-service provision in the FLSA only requires resort to state law for service of process. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) ("[I]n federal question cases . . . a plaintiff need only show that the defendant has adequate contacts with the United States as a whole . . . [H]owever, the plaintiff must still ground its service of process in a federal statute or civil rule.")  It says nothing about whether 4(k)(1)(A) constrains the court's jurisdiction once service is effectuated.[14]

Finally, much of the Sixth Circuit opinion sought to distinguish FLSA collective actions and Rule 23 class actions, likening collective actions to the mass action in BMS. See Canaday, 9 F.4th at 402-03. We agree that FLSA collective actions and Rule 23 class actions are dissimilar in myriad ways. The paramount similarity, and the only one that matters for purposes

---

[14] The Sixth Circuit contended that such an interpretation would render nationwide service of process provisions pointless. Canaday, 9 F.4th at 399 ("What indeed would be the point of these provisions if Civil Rule 4(k) already allowed jurisdiction and service?").  But our interpretation of Rule 4(k) does not allow nationwide service in all cases.  Initial service must still rely on state law when there is no nationwide service provision.

of assessing the district court's jurisdiction here, is that the named plaintiff in both actions is the only party responsible for serving the summons, and thus the only party subject to Rule 4.[15]

**VI.**

Accordingly, we **affirm** the district court's denial of D&Z's motion to dismiss the nonresident opt-in plaintiffs.  The decision is

**Affirmed.  Costs to appellee.**

**-Dissenting Opinion Follows-**

---

[15] A separate Sixth Circuit opinion recently held that the personal jurisdiction inquiry in a Rule 23 class action is required only for a named plaintiff's claims because "a class action is formally one suit in which, as a practical matter, a defendant litigates against only the class representative," and "absent class members are not considered 'parties,' as a class representative is, for certain jurisdictional purposes."  See Lyngaas v. Curaden AG, 992 F.3d 412, 435 (6th Cir. 2021).

**BARRON, <u>Circuit Judge, dissenting</u>.** The majority today decides a significant question of first impression in our Circuit about the meaning of Federal Rule of Civil Procedure 4(k)(1)(A). It does so in a manner that creates a direct conflict with the ruling of two circuits and that will have seemingly wide-ranging effects on a slew of cases that have nothing to do with the specific dispute at hand. In my view, there is no reason for us to decide this question at this time, given the interlocutory posture of this appeal. Thus, I write separately to explain why, for reasons independent of the merits of the majority's ruling, I dissent.

## I.

Federal Rule of Civil Procedure 4(k)(1)(A) provides that a summons "establishes" personal jurisdiction over a defendant in a civil action that is brought in federal court if the defendant "is subject to the jurisdiction of a [state] court of general jurisdiction in the state where" the civil action commenced. In response to relatively recent developments in the law that defines the limits that the Fourteenth Amendment's Due Process Clause places on the exercise of personal jurisdiction over a defendant in a civil action in <u>state</u> court, <u>see</u> <u>Bristol-Meyers Squibb Co.</u> v. <u>Superior Court of California, San Francisco County</u>, 137 S. Ct. 1773 (2017), some commentators have called for amending Rule 4(k)(1)(A). The commentators argue that, due to these recent developments, an amendment to the rule is necessary to ensure that

it does not become a bar to the beneficial aggregation of claims in _federal_ court that it was not originally intended to be.  See Scott Dodson, _Personal Jurisdiction and Aggregation_, 113 Nw. U. L. Rev. 1, 37-40 (2018); _see also_ Stephen E. Sachs, _How Congress Should Fix Personal Jurisdiction_, 108 Nw. U. L. Rev. 1301, 1316 (2014).

The commentators assert that for most of the rule's life Fourteenth Amendment-based due process limits on the exercise of personal jurisdiction in state court were not as strict as the Supreme Court of the United States has deemed them to be in recent rulings, such as _Bristol-Meyers Squibb_.  _See_ Dodson, _supra_, at 37. The commentators also note that Fifth Amendment-based due process limits on the exercise of personal jurisdiction in federal court are not nearly as strict as the Fourteenth Amendment's parallel limits in state court have been held to be.  _See_ A. Benjamin Spencer, _The Territorial Reach of Federal Courts_, 71 Fla. L. Rev. 979, 990-91 (2019).  The commentators thus contend that there is no good reason to saddle federal courts -- as Rule 4(k)(1)(A) now saddles them -- with the current limits on the exercise of personal jurisdiction that the federal Constitution imposes only on state courts.  _See, e.g.,_ the sources cited in Dodson, _supra_, at 36 n.216.

Nonetheless, no such amendment to Rule 4(k)(1)(A) has been made to this point, and defendants are invoking the rule with

seemingly greater frequency to request that federal courts dismiss claims based on limits on the exercise of personal jurisdiction imposed on state courts by the Fourteenth Amendment's Due Process Clause.  See, e.g., Lyngaas v. Curaden Ag, 992 F.3d 415 (6th Cir. 2021); Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293 (D.C. Cir. 2020).  Indeed, this case reflects the trend, as the defendant here -- Day & Zimmermann -- contends that Rule 4(k)(1)(A) bars the United States District Court for the District of Massachusetts from exercising personal jurisdiction over certain claims solely because of constraints that a state court in Massachusetts would face in exercising personal jurisdiction over those same claims by virtue of recent Supreme Court precedent interpreting the Fourteenth Amendment's Due Process Clause.

Specifically, Day & Zimmermann contends that, because of the interaction between Rule 4(k)(1)(A) and the Fourteenth Amendment-based due process limits on personal jurisdiction over a defendant in state court that were relatively recently set forth in Bristol-Myers Squibb, the District Court must dismiss the claims of certain of the individuals who have filed written consent forms that signal their intention to participate in the collective action that the named plaintiff here, John Waters, has initiated by the inclusion of a Fair Labor Standards Act (FLSA) collective action claim in his complaint pursuant to section 216(b) of the FLSA.  In that complaint, Waters asserts, alongside his own solely

- 38 -

individual claim under the FLSA, an FLSA claim "on behalf of" what his complaint refers to as a "putative class" of certain former employees of Day & Zimmermann who are "similarly situated" to him. See 29 U.S.C. § 216(b).

**II.**

In rejecting Day & Zimmermann's contention that the District Court erred in denying the motion to dismiss the claims just described, the majority relies on the text and purposes of Rule 4(k)(1)(A). The majority contends based on these interpretive sources that the rule is best read to restrict the scope of the condition that it sets forth that makes it so that a summons "establishes" personal jurisdiction in federal court over the defendant who is served with it -- namely, the condition that the defendant "is subject to the jurisdiction of a [state] court of general jurisdiction in the state where the" civil action commenced.

In the majority's view, Rule 4(k)(1)(A) must be read to subject that condition to an implicit time-of-service-based limitation on its scope. The majority therefore rejects the contention -- pressed vigorously by Day & Zimmermann -- that the rule provides that the condition that it sets forth must be satisfied for the life of the suit.

In other words, the majority embraces a reading of the rule in which that condition need be satisfied only at the time

that the summons is served. For this reason, the majority concludes that the condition need not be satisfied, as Day & Zimmermann would have it, as to any claims and plaintiffs that are added _after_ the summons has been served.

The result is that, under the majority's reading of Rule 4(k)(1)(A), Fourteenth Amendment-based due process limits on personal jurisdiction in state court -- including those set forth in Bristol-Myers Squibb -- can have no application to the claims of those individuals here who have filed written forms in which they have consented to participate in Waters's collective action pursuant to section 216(b) of the FLSA. As the majority explains, such due process limits have no application to those claims by virtue of the Fourteenth Amendment itself, given that the suit is being brought in federal court. And, as the majority emphasizes, those limits also have no application to those claims by virtue of Rule 4(k)(1)(A), because the individuals who filed the written forms in which they consented to participate in Waters's FLSA collective action did so only _after_ Waters had served Day & Zimmermann with the summons.

Thus, according to the majority, it follows that the only bar that could potentially prevent the District Court from exercising personal jurisdiction over Day & Zimmermann as to the claims at issue in this appeal is the bar that the Due Process Clause of the Fifth Amendment might impose. But, as the majority

rightly concludes, Day & Zimmermann has made no argument that the Fifth Amendment's Due Process Clause does impose any such bar here. For that reason, the majority affirms the District Court's denial of the motion to dismiss that is before us in this appeal.

## III.

The majority's time-of-service-based reading of Rule 4(k)(1)(A) is internally coherent. The text of that rule is at least arguably ambiguous as to whether the summons "establishes" personal jurisdiction over the defendant for the life of the suit only if that defendant "is" subject to the jurisdiction of the state court for the life of the suit or whether the summons "establishes" personal jurisdiction over the defendant for the life of the suit so long as that defendant "is" subject to the jurisdiction of a state court at the time that the summons is served.

The majority's time-of-service-based reading of the rule also accords with the intuition that it would be odd for a rule that seeks only to describe the means for making service of process effective to make those means dependent on events that might occur after service has been made. It is an arguable virtue of the majority's reading of the rule that one need only attend to what has occurred up until service has been completed to know whether such service has been effective.

The majority's reading of the rule also has going for it one more thing: it helps to ensure that the rule will not prove to be the seemingly unintended obstacle to the beneficial aggregation of claims in federal court that has provoked some commentators to call for its amendment. That is because, under the majority's reading of the rule, a plaintiff may ensure the beneficial aggregation of such claims in most cases merely by amending the complaint after the summons has been served to include any claims over which a state court would not be able to exercise personal jurisdiction.

These features of the majority's reading of the rule do not, however, spare it from being controversial. The reading is in apparent tension with the broader, life-of-the-suit reading of the rule's condition that would appear to undergird the commentators' calls for its amendment. It would be strange for these commentators to have called for such an amendment if they in fact share the majority's view that the rule's deleterious effects on the beneficial aggregation of claims plainly can be overcome at present by a means as simple as the post-summons amendment of the complaint that was operative at the time that the summons was served. See A. Benjamin Spencer, Out of the Quandary: Personal Jurisdiction over Absent Class Members Explained, 39 Rev. Litig. 31, 43 (2019) ("It would be preposterous to suggest that . . . amended complaints . . . may evade the restrictions

applicable to claims contained within complaints served under Rule 4, subject only to the limits of the Fifth Amendment's due process clause. Were such the case, the ability to amend would provide a gaping loophole to the ordinary territorial restrictions on federal court jurisdiction that Rule 4(k) imposes.").

The majority's reading of Rule 4(k)(1)(A) also directly conflicts, as the majority itself acknowledges, with that of other circuits. See Canaday v. Anthem Cos., 9 F.4th 392, 400 (6th Cir. 2021) ("Even with amended complaints . . . the district court remains constrained by Civil Rule 4(k)'s -- and the host State's -- personal jurisdictional limitations."); see also Vallone v. CJS Solutions Grp., LLC, 9 F.4th 861, 865 (8th Cir. 2021). Nor am I aware of any other case in which any court (including our own) has ever read Rule 4(k)(1)(A) in the narrow, time-of-service-limited way that the majority reads it.

Indeed, the common (if, perhaps unreflective) practice of federal courts under this rule appears, as best I can tell, to have been to apply Fourteenth Amendment-based (rather than Fifth Amendment-based) due process limits on personal jurisdiction throughout a suit's duration, and so even as to later-added claims and plaintiffs. See, e.g., Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 902-03 (10th Cir. 2017) (noting that the plaintiff's amended complaint is "the operative one" for the purpose of analyzing a Rule 12(b)(2) motion to dismiss for lack of

personal jurisdiction); see also Spencer, Out of the Quandary, supra, at 43 ("There is no question that -- notwithstanding that such amended complaints are not served with a summons under Rule 4 -- new claims appearing in amended complaints must satisfy the jurisdictional constraints imposed by Rule 4(k); courts regularly apply Rule 4(k)(1)(A) limitations to the claims appearing in amended complaints.").[16] Thus, it would appear that, given the way that the majority now reads the rule, federal courts in our circuit will have to change how they have been doing things in many cases, and in all cases that involve state law claims. For, under the majority's reading, they will have to assess personal jurisdiction in those cases with exclusive reference to Fifth Amendment-based

---

[16] The majority appears to suggest that even if Rule 4(k)(1)(A) applies to state law claims added post-summons, it does not apply to parties asserting federal claims post-summons. Maj. Op. at 31 n.10. But, nothing in the text of the rule distinguishes between the rule's application to state law claims and its application to federal ones, even though the rule plainly applies to federal claims generally, see Walden v. Fiore, 571 U.S. 277, 283 (2014) (applying Rule 4(k)(1)(A) to a federal law claim), and even though other parts of Rule 4(k) do expressly distinguish between state and federal claims, see Fed. R. Civ. P. 4(k)(2) (drawing that very distinction by way of reference to "a claim that arises under federal law"). Nor does anything in the text of the rule distinguish between the rule's application to claims and its application to parties. Thus, it would appear to be the case that however the rule applies to later-added state law claims must be how it applies to later-added parties asserting federal claims. I add only that the rule's failure to draw a distinction between state and federal claims is precisely what has motivated commentators to recommend that the rule be amended to ensure that federal claims (including, it seems, ones brought by later-added parties) are not subject to the rule in the same way that state law claims are. See Dodson, supra, at 37-40.

due process limits (and thus to work their way through all the legal complexity that may arise from their doing so in cases involving state law claims) despite their seeming common practice of not using that lens except in certain classes of cases that involve federal claims, see Fed. R. Civ. P. 4(k)(1)(C); id. 4(k)(2), in which the degree of legal complexity that then arises from using that same lens is much less.

**IV.**

In my view, there is no reason to decide in this case whether the majority is right to read Rule 4(k)(1)(A) to be subject to the implicit time-of-service limitation that it discerns on the scope of the condition that the rule sets forth. Given the embryonic state of the FLSA collective action that is before us and the interlocutory nature of this appeal, I would let the suit proceed apace in the District Court rather than attempt to resolve on interlocutory review this substantial question of first impression in our Circuit about the best way to read Rule 4(k)(1)(A). In fact, it seems to me that there is special reason to follow this more restrained course here, because the resolution of the question that the majority chooses to decide in this case's preliminary posture will be binding in our Circuit not only in cases that concern collective actions under the FLSA but also in a whole range of cases that also implicate Rule 4(k)(1)(A) but that have nothing to do with FLSA collective actions at all.

I note that the more cautious approach that I favor, which would cause me to dismiss this interlocutory appeal, accords with our general reluctance to hear appeals from denials of motions to dismiss precisely because such appeals necessarily come to us on an interlocutory basis. See Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 8 (1st Cir. 2005) (acknowledging "our general rule prohibiting interlocutory appeals from the denial of a motion to dismiss"). Nor do I see a reason to deviate from this tried-and-true stance by making a case-specific exception to it here, even if there might be good reason to make such an exception in some cases that involve requests to appeal from denials of motions to dismiss that are made in connection with collective actions that are brought under section 216(b) of the FLSA.

The underlying (and unsuccessful) motion to dismiss that is at issue here was made before the named plaintiff who filed the complaint asserting the FLSA collective action claim, Waters, has even moved to certify the putative class of "similarly situated" employees on whose behalf he seeks to sue in bringing that claim. See 29 U.S.C. § 216(b). Thus, as Waters pointed out in opposing interlocutory review of the denial of that motion here, still more opt-ins may consent to participate in the collective action that is at issue even after a ruling on the merits of this appeal. Nor do we know for certain at this juncture -- as we would if we waited for a motion to certify to be filed -- that Waters will seek to

- 46 -

bring a collective FLSA action on behalf of every present opt-in, let alone on behalf of each of those opt-ins who would be permitted to sue under the majority's construction of Rule 4(k)(1)(A).  Cf. Molock, 952 F.3d at 298-99 ("[P]rior to . . . certification, the potential [collective action] and their potential claims are just that: potentials.").  And, of course, it is up to Waters in the first instance whether any individual who might wish to opt in and participate in the collective action may do so, precisely because he is bringing it.

Reinforcing the reason to adhere in this case (given its nascent nature) to our usual unwillingness to resolve an appeal from a denial of a motion to dismiss is the fact that Day & Zimmermann has made little more than a conclusory showing about the need for us to weigh in now on the District Court's ability to exercise personal jurisdiction over it as to the claims of members of what at this point is only a "putative" class of claimants. That Day & Zimmermann has not made a substantial showing of an unusual need for resolution of that question this early in this case is especially significant because it is not as if Day & Zimmermann is presently at risk of being held liable to any of the so-called opt-ins who might end up being in that still, as-yet-defined class.

If a default judgment were entered against Day & Zimmermann at this point in the case, I do not see how any of those

individuals who thus far have filed written consent forms to participate in Waters's collective action under the FLSA could benefit from that judgment any more than they could if they had not filed such forms. That is precisely because the named plaintiff who is bringing the collective action under the FLSA, Waters, has not yet moved for certification of a collective action on their behalf -- or, for that matter, on behalf of anyone. Cf. Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) (granting a motion for certification of an FLSA collective action simultaneously with a motion for default judgment).

Thus, while I recognize that an earlier panel of our Court granted the petition for certification of the interlocutory appeal pursuant to 28 U.S.C. § 1292(b), see Waters v. Day & Zimmermann NPS, Inc., No. 20-1831 (1st Cir. Oct. 14, 2020), I am convinced -- now that we have had full briefing and oral argument as that panel did not -- that the petition was improvidently granted. See Caraballo-Seda, 395 F.3d at 9. I am aware in so concluding of the out-of-circuit precedent that has permitted the interlocutory review of the merits of a ruling on a motion to dismiss the claims of individuals who had opted in to a named plaintiff's collective action claim under the FLSA. But, the cases that have permitted such an appeal were ones not only in which that appeal was from a grant of the motion to dismiss but

- 48 -

also in which the appeal was from a ruling on a motion to dismiss that was made at the time of (or in the wake of) a motion to certify a class of similarly situated persons on behalf of whom the named plaintiff was bringing the collective action under the FLSA.  See Canaday, 9 F.4th at 395; see also Vallone v. CJS Solutions Grp., LLC, 9 F.4th 861, 864 (8th Cir. 2021) (involving appellate review of a district court's order limiting an FLSA collective action to "employees 'who engaged in out-of-town travel to or from a Minnesota jobsite for [the defendant] or who resided in Minnesota'").  I am not aware of any precedent prior to this case in which a court has permitted interlocutory review of a denial of a motion to dismiss such opt-in claims in an FLSA collective action, let alone any such precedent in a case of that sort in which the denial of the motion to dismiss preceded -- as it does here -- a motion to certify the class of "similarly situated" persons on whose behalf the named plaintiff is bringing the collective action under the FLSA.[17]

---

[17]   I note that, in other cases in which, like here, the named plaintiff had made no motion to certify the class of "similarly situated" individuals on whose behalf the FLSA collective action would be brought, other district courts have denied motions to certify for interlocutory appeal under 28 U.S.C. § 1292(b) the district court's order denying a Fed. R. Civ. P. 12(b)(2) motion to dismiss the claims of opt-ins.  See Murphy v. Labor Source, LLC, No. 19-cv-1929, 2021 WL 527932 (D. Minn. Feb. 12, 2021); Seiffert v. Qwest Corp., No. CV-18-70-GF-BMM, 2019 WL 859045 (D. Mont. Feb 22, 2019).

Accordingly, I would dismiss this appeal. By doing so, we would be following our usual wait-and-see approach when confronted with a request to decide an appeal from a denial of a motion to dismiss, and, by doing so, we also would be ensuring that we would not be deciding a major question about the meaning of the Federal Rules of Civil Procedure in a case in which it may turn out not to be necessary for us to decide that question at all.[18]

---

[18] The majority does undertake an extensive analysis of whether the opt-ins in an FLSA collective action are party-plaintiffs who can appeal a ruling denying certification of a collective action on their behalf. See Campbell v. City of Los Angeles, 903 F.3d 1090, 1104-06 (9th Cir. 2018); Mickles v. Country Club Inc., 887 F.3d 1270, 1278 (11th Cir. 2018). But, I do not see how those precedents are relevant to the question that is my concern, which pertains to whether we should be entertaining this interlocutory appeal when no motion for certification has even been filed, let alone denied. I do also note that even if the majority is right to endorse the precedents that it relies on about the party-plaintiff status of opt-ins, the wait-and-see approach that I favor avoids the oddity of resolving on appeal the merits of a motion to dismiss claims that belong to individuals who are not even listed in the case's caption as parties to the appeal. My concern with our choosing to resolve such a motion in this odd posture is heightened by the fact that nothing in Day & Zimmermann's briefing to this Court indicates that Day & Zimmermann is seeking to dismiss Waters's collective action claim itself (even in part), as the briefing by Day & Zimmermann advances arguments for dismissing only the claims of the individual opt-ins, none of which are Waters's claims alone. Cf. Molock, 952 F.3d at 300. In any event, insofar as Day & Zimmermann could be understood to be seeking to dismiss not those claims directly but only Waters's collective action claim insofar as it is brought on the opt-ins' behalf, the appeal remains interlocutory and thus still should be dismissed for all the reasons that I have given.